## PACIFIC MAIL STEAMSHIP COMPANY *v.* SCHMIDT.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 323.   Argued April 25, 26, 1916.—Decided May 22, 1916.

Where the writ of certiorari was granted to review the question of law, and evidently would not have been granted simply to reopen the inquiry into the facts, this court will assume the lower courts were right where they agreed upon the construction of the facts even though otherwise it might hesitate to do so.

This court will not assume that Congress intended to cut off an opportunity to revise doubtful questions of law and fact by imposing a penalty for reasonable delay in payment caused by an appeal based on sufficient cause.

Under § 4529, Rev. Stat., as amended December 1, 1898, a shipowner is not liable for the penalty for delay in payment of a seaman's wages during the period between judgment in the District Court and affirmance thereof by the Circuit Court of Appeals where, as in this case, there was reasonable cause for prosecuting the appeal.

214 Fed. Rep. 513, reversed.

THE facts, which involve the construction and application of Rev. Stat., § 4529, as amended by the Act of December 21, 1898, are stated in the opinion.

*Mr. William R. Harr,* with whom *Mr. Charles H. Bates, Mr. George A. Knight* and *Mr. Charles J. Heggerty* were on the brief, for the petitioner.

*Mr. James W. Ryan,* by special leave, with whom *Mr. John L. McNab* was on the brief, for the respondent:

Respondent rendered services as a seaman.

The respondent was under shipping articles, because the articles were for a definite time and the respondent's duties under the articles had not been completely performed.

The vessel was bound to a foreign port, because she was bound to any part of the world and was registered for the foreign trade, and Ancon, Canal Zone, is a foreign port.

The petitioner continuously refused, without any reasonable ground for dispute, to pay respondent the wages actually earned and could have prevented the wages from continuing.

The measure of damages decreed by the Court of Appeals is that provided by § 4529, Rev. Stat., and victualling money is a part of wages.

The Court of Appeals had power to give effect to the statute by making the rate of interest on the decree of the District Court such that the interest would equal the sum which the statute provided should be recoverable by the seaman.

The rate of interest in the admiralty is determinable at the discretion of the appellate court.

There was a manifest error of law apparent upon the face of the record in this case.

An appeal in admiralty from a District Court to the Circuit Court of Appeals opens the whole case for trial *de novo* in the appellate court.

The appellate jurisdiction of the Circuit Court of Appeals is the same as that of the Supreme Court from 1803 to 1875.

The appellate jurisdiction of the Circuit Court of Appeals is the same as that of the old Circuit Courts on appeals from the District Courts.

A seaman's wages continue until actually paid, notwithstanding intervening decrees of inferior courts.

The decree of the Court of Appeals should be modified so that the respondent may recover two days' pay for every day since November 4, 1915.

In support of these contentions, see *The Albert Dumois,* 177 U. S. 240; *The Argo,* 210 Fed. Rep. 872; *The Blenheim,* 18 Fed. Rep. 47; *Caine* v. *Palace Shipping Co.,* 10 Asp. M. C., N. S., 529; *Chicago Ins. Co.* v. *Graham,* 108 Fed. Rep. 271; *The Chieftan,* 8 L. T. 120; *City of Cleveland* v. *Chisholm,* 90 Fed. Rep. 431; *Dooley* v. *United States,* 183 U. S. 151; *Dower* v. *Richards,* 151 U. S. 658; *Downes* v. *Bidwell,* 182 U. S. 244; *The Express,* 59 Fed. Rep. 476; *Gilchrist* v. *Chicago Co.,* 104 Fed. Rep. 566; *Re Great Eastern S. S. Co.,* 5 Asp. M. C., N. S., 511; *Hemmenway* v. *Fisher,* 20 How. 255; *Henderson* v. *Kanawha Dock Co.,* 185 Fed. Rep. 781; *The Insular Cases,* in Volume 182 United States Reports; *Irvine* v. *The Hesper,* 122 U. S. 256; *The Minnie,* 225 Fed. Rep. 36; *Munson Line* v. *Miramar S. S. Co.,* 167 Fed. Rep. 960; *Nelson* v. *White,* 83 Fed. Rep. 215; *The North Star,* 62 Fed. Rep. 71; *The Nyack,* 199 Fed. Rep. 383; *Pettie* v. *Boston Towboat Co.,* 49 Fed. Rep. 464; *Queen* v. *S. S. Michigan,* 25 L. R., Q. B. D., 339; *Reg.* v. *Lynch,* 8 Asp. Rep. M. C., N. S., 363; *Reid* v. *Fargo,* 213 Fed. Rep. 771; *The San Rafael,* 141 Fed. Rep. 270; *Schmidt* v. *Pacific Mail S. S. Co.,* 209 Fed. Rep. 264; *S. C.,* 214 Fed. Rep. 513; *The Scotland,* 118 U. S. 507; *The Sirius,* 54 Fed. Rep. 188; *The Maggie J. Smith,* 123 U. S. 349; *The State of California,* 49 Fed. Rep. 172; *The Tergeste,* 9 Asp. M. C., N. S., 356; *Thomson* v. *Hart,* 28 Scot. L. R. 28; *The Tokai Maru,* 190 Fed. Rep. 450; *The Umbria,* 59 Fed. Rep. 489; *Union Steamboat Co.* v. *Chaffin,* 204 Fed. Rep. 412; *The Western States,* 159 Fed. Rep. 354; Seamen's Act

of March 4, 1915, 38 Stat. 1164; English Merchant Shipping Acts; § 4511, Rev. Stat.; § 4529, Rev. Stat.; § 4612, Rev. Stat.; 23 Stats. L. 58; § 8301, U. S. Comp. Stats. 1913; Judicial Code, § 122; 26 Stats. L. 826; Dewhurst's Rules, U. S. Courts, p. 264; Rule 23, subd. 4, U. S. Sup. Ct.; Rules 24, subd. 4, and 30, subd. 4, C. C. A., 9th Circuit.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a libel *in personam* for $30.33, wages and victualling money from September 24 to October 1, 1913, and for a sum equal to one day's pay for every day during which payment had been or should be delayed. The libel was filed on October 20, 1913. On November 5, 1913, the District Court entered a decree for $151.59 with interest from the date of its decree and $36.25 costs. 209 Fed. Rep. 264. The libellee, the present petitioner, appealed, but without success, and on May 18, 1914, the decree was affirmed with directions to add one day's pay for every day since the former decree. On October 6, 1914, an order was made by the Circuit Court of Appeals that the petitioner should pay to the proctor for the appellee the amount of the judgment of the District Court with costs and proctor's fee as allowed, and should pay to the Clerk of the District Court the additional amount to the date of deposit of the penalty adjudged to be continuing; to abide the result of an application to this court for a writ of certiorari, and that upon such payment the running of the penalty should cease so far as the judgment of the Circuit Court of Appeals was concerned.

The facts are these: On July 24, 1913, the libellant shipped as chief steward, under articles, from San Francisco to Ancon, Canal Zone, and such other ports as the master might direct and back to a final port of discharge in San Francisco, for a term of time not exceeding six calendar months. The vessel returned to San Francisco

on September 23, and on September 24, 1913, the libellant was paid in full by the Shipping Commissioner and that date noted as the date of termination of voyage on the articles. As seems to have been usual, however, the libellant remained on board working and in the ordinary course probably would have signed new articles for the next voyage, but on October 1 was notified that he was discharged. On his demanding his wages for his services in port he was told that silverware to the amount of $32.90 was missing, that he was accountable for it and this sum offset his claim. There is no doubt that this offset, which was alleged again in the pleadings, was set up in good faith, but as both the courts below have found that it was not made out we assume that it was not proved.

The statute under which the penalty was imposed is Rev. Stat., § 4529, as amended by the act of December 21, 1898, c. 28, § 4; 30 Stat. 756. By that act "the master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he shipped, or at the time such seaman is discharged, whichever first happens; and in the case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or *vice versa*, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens. . . . Every master or owner who refuses or neglects to make payment in manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to one day's pay for each and every day during which payment is delayed beyond the respective periods." We assume, not only as we have said that the claim of offset was not established, but the more doubtful proposition that it did not furnish sufficient cause for the delay. We assume therefore that the petitioner did not sufficiently justify putting the libellant to a suit.

But it is far less clear that the District Court was justified in treating the case as within the penalties of the act. The statute deals with voyages. The voyage for which the libellant shipped was at an end, viz., from San Francisco out and back to that port, or till the end of six months, whichever first happened. On the return to San Francisco within the time the libellant was paid all that was due to him, and he himself lays his employment as beginning in San Francisco on September 25 after the voyage described in the articles was at an end. No new articles had been signed and it would seem on the allegations of the libel coupled with the admitted facts that the libellant's legal standing was under an oral contract for a few days in port while hoping to be reshipped. It seems to us a very strong thing to say that any fair construction of the facts brings the case within the act. But as the two courts have agreed upon this proposition also and as the writ would not have been granted to reopen the inquiry into those particular facts we assume that upon this also they were right.

It is a very different thing, however, to say that the delay occasioned by the appeal was not for sufficient cause. Even on the assumption that the petitioner was wrong it had strong and reasonable ground for believing that the statute ought not to be held to apply. So that the question before us is whether we are to construe the act of Congress as imposing this penalty during a reasonable attempt to secure a revision of doubtful questions of law and fact, although its language is 'neglect . . . without sufficient cause.' The question answers itself. We are not to assume that Congress would attempt to cut off the reasonable assertion of supposed rights by devices that have had to be met by stringent measures when practiced by the States. *Ex parte Young*, 209 U. S. 123. There was sufficient cause for the neglect to pay after the decree of the District Court, since the payment of

the original wages without the penalty that was reasonably in dispute would neither have been accepted nor allowed.

Not only so, but there was further reasonable cause for the delay by appeal in the fact that victualling money was included in the wages by which the penalty was measured. Seeing that the petitioner was held as if the articles still were in force the question arises how the wages could be estimated at more than the articles fixed. The so-called port pay which added a dollar a day for food was an arrangement altogether outside the articles, and the demand for it and the allowance of it not only raised a new question but intensified the doubt as to how it could be said that the voyage was not ended and that the penalty could be applied. See *Palace Shipping Co., Ltd.,* v. *Caine,* [1907] A. C. 386. We shall allow the decree of the District Court to stand, as we have stated, but there was ample justification for the appeal and on both the above grounds sufficient reason for the delay. We need not consider whether if there had been no such reason there would be any escape from *Massachusetts* v. *West. Un. Tel. Co.,* 141 U. S. 40, where under a similar statute it seems to have been held that the penalty stopped with the decree below.

> *Decree reversed.*
> *Decree of District Court affirmed.*