## THE CATALONIA.

### (District Court, E. D. Virginia. September 28, 1916.)

1. SEAMEN &wkey;16—SHIPPING ARTICLES—CONSTRUCTION.

Shipping articles for a voyage from the port of New York to a port in Chile and such other ports and places in any other part of the world as the master might direct, and back to New York, the final port of discharge in the United States, for a term not exceeding 12 months, do not bind seamen to take as many voyages from the United States as the master of the ship may wish to make to any place or places in the world, provided he return to New York, the final port of discharge, within 12 months, but merely bind the seamen to make one voyage to Chile and to such other ports as the master on that voyage may direct, and where the master construed the articles as allowing him, on returning to the United States, to select as a port of discharge some port other than New York, it being understood that the term "port of discharge" covered a wide radius, the seamen are, on return to a port of discharge in the United States, entitled to their wages.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 56–65; Dec. Dig. &wkey;16.]

&wkey;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SEAMEN ☞7—SHIPPING ARTICLES—CONSTRUCTION.

    Shipping articles, being prepared by a master, should be construed liberally in favor of seamen.

    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 19-24; Dec. Dig. ☞7.]

In Admiralty. Libel by Eric Shafer and others against the steamship Catalonia. Decree for libelants.

Bowden & Heard, of Norfolk, Va., for libelants.
Thomas H. Willcox, of Norfolk, Va., for respondent.

WADDILL, District Judge. [1] The conclusion of the court is that the shipping articles involved in this litigation contemplate a single voyage from New York, and back to a port of discharge in the United States, not to cover a longer period than 12 months; that the language "from the port of New York to Iquique, Chile, and such other ports and places, in any other part of the world, as the master may direct, and back to New York, a final port of discharge in the United States, for a term of time not exceeding 12 calendar months," does not mean that the seamen bound themselves to take as many voyages from this country as the master of the ship might wish to make to any place or places in the world, provided he returned to New York, a final port of discharge, within 12 calendar months. The words "such other ports or places in any part of the world" are used in connection with the specific trip contracted for; that is to say, that the master might make such journey in connection with the special voyage from New York to Iquique, and back to New York, a final port of discharge in the United States, or such trip or trips as might be made within the calendar year, before returning to a port in this country, and if the master chose, upon coming to this country, as a port of final discharge, to go to some other place than New York, namely, Norfolk, he would not be thereby relieved from liability for the seamen's wages, nor would they be deprived of their right of discharge.

This view is borne out by the master's understanding of the ending of the voyage, as testified to by him. In answer to the question of whether he expected to discharge at New York, on entering upon the voyage, he said:

    "We never know where we are to discharge; we have a radius from New Orleans to Boston."

This clearly shows that Norfolk was within the spirit and contemplation of the undertaking, if not within the strict letter of the articles; and if, during the period of 12 months, the ship came back to any port of this country within the radius as described by the master, and there finally discharged, the seamen became entitled to their wages.

[2] The master's contention would make the articles too indefinite as to the extent of the voyage; and the same could be avoided for uncertainty and ambiguity, if such an interpretation should be placed

upon them. Such view might operate unfairly to the seamen, who belong to a class who are ever entitled to the consideration of a court of admiralty; and, moreover, as between themselves and the master, the articles should be construed liberally in their favor, since the same were the product of the master, and not of themselves.

A decree will be entered on presentation, in favor of the libelants, with costs.