### UNITED STATES v. WESTWOOD et al.

(Circuit Court of Appeals, Fourth Circuit. April 27, 1920.)

No. 1789.

Seamen ⊕⟿7—Shipping articles must describe intended voyage.

Shipping articles are mercantile documents, and entitled to a liberal construction to accomplish the purpose the parties had in mind; but under Rev. St. § 4511 (Comp. St. § 8300), they must, to be valid, inform the seaman, in general terms at least, what kind of voyage is then planned, reserving on their face, if need be, sufficient latitude for changes to meet subsequent exigencies.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty by C. G. Westwood and others against the United States. Decree for libelants, and the United States appeals. Affirmed.

For opinion below, see 261 Fed. 414.

Hiram M. Smith, U. S. Atty., of Richmond, Va., for appellant.
Henry Bowden, of Norfolk, Va., for appellees.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The appellees were the libelants below and will be so styled here.

On the 3d of April, 1919, they shipped at Baltimore on the Shipping Board's steamship Quoque, "from the port of Baltimore, Md., to such

ports and places in any part of the world, via an American port, as the master may direct, and back to a final port of discharge in the United States, for a term of time not to exceed six calendar months." Shortly after the articles were signed, the ship, with a cargo of coal, sailed for Molendo, Peru, and there delivered it. It next went to Guayquille, and then to Mantes, both in Ecuador, and took on a new cargo. Thereupon it set out for Havre, France, via Norfolk, where it stopped for bunker coal. At the last-mentioned port the libelants, apparently construing the shipping articles to mean that if the ship touched at an American port it was to be while outward bound, demanded their discharge and payment in full, on the ground that the voyage for which they had shipped had ended. Upon the ship's refusal to accept this view they instituted these proceedings.

In the District Court and here the question as to the construction of the articles was replaced by the more fundamental one as to their validity, no matter what they meant. The learned judge below held that they were void, because they did not comply with the requirements of section 4511 of the Revised Statutes (Comp. St. § 8300) and the form of shipping articles thereto annexed. It is there provided that they shall contain, among other things, the nature and as far as practicable the duration of the intended voyage or engagement, and the port or country at which the voyage shall terminate, and, if it can be done, the places at which it is to touch. Congress, in the legislation in question, recognized that at the inception of a voyage it would often be commercially impracticable to define with precision all that it may in the course of events come to include.

Shipping articles are mercantile documents, and are entitled to a liberal construction in order to accomplish the purpose the parties had in mind. They are not to be scrutinized as if they were legal pleadings. Nevertheless it is clear that the Legislature has directed that the articles a seaman is asked to sign shall tell him in general terms, at least, what kind of a voyage the master is then planning to undertake, reserving on their face, if need be, sufficient latitude for the changes which may subsequently arise from the exigencies of a successful participation in the world's carrying trade. Tested by even this liberal rule, the articles at bar are plainly insufficient. The master knew he was going to a port on the west coast of South America, but the articles did not tell the seamen so. For all that appears upon them, the ship might have been bound to any port in the seven seas.

The plain purpose of the statute cannot be thus ignored.

Affirmed.