**OLDFIELD v. THE ARTHUR P. FAIRFIELD et al.**

No. 12092.

United States Court of Appeals
Ninth Circuit.

June 22, 1949.

Rehearing Denied Aug. 12, 1949.
Writ of Certiorari Denied Nov. 14, 1949.
See 70 S.Ct. 158.

Tanner & Clark, K. C. Tanner, Edward J. Clark, Portland, Or., Levinson & Friedman, Sam L. Levinson and Edwin J. Friedman, Seattle, Wash., for appellant.

Bogle, Bogle & Gates, Edw. S. Franklin, Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, and BONE, Circuit Judge, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

A libel for wages was filed by Oldfield, a seaman, against the steamship "Arthur P. Fairfield," pursuant to 28 U.S.C.A. § 41(3) [now § 1333] and Admiralty Rule 13, 28 U.S.C.A. The defense was that there was properly deducted a pro rata portion of a fine levied against the ship on account of misconduct of the seaman.

The cause was tried. Findings of fact and conclusions of law were entered. The Court found that, while the ship upon which libelant was serving was anchored off Rotterdam, he and other crew members were advised that, under the custom regulations of the port, each would be allowed to have only one carton of cigarettes and were ordered to deliver all excess cartons to the purser for keeping. But libelant, with certain other seamen, secreted 125 cartons of cigarettes, undeclared, about the vessel, which were discovered by the custom officials. As a result, the Master was required to pay $3,018.96 for a release of the vessel. Libelant was not tried for smuggling in the Dutch Courts. As a result, a deduction of appellant's pro rata share of the fine was made. When the deduction was protested at the time the crew was paid off, the Shipping Commissioner said, if Oldfield could produce a witness who saw him throw the cigarettes overboard, the Commission would lift the log. Oldfield did not do this, but signed off under protest. He then brought this case. It is notable

that he did not appear or testify at the hearing in Court. The respondents subsequently were able to have the fine reduced by the Dutch authorities to $699.04, and therefore credited libelant with his proportional share of the refund. As a result, the Court gave judgment to libelant by agreement in the sum of $368.24, the balance of his wages. The appeal was then taken.

The contention is that the statute, 46 U.S.C.A. §§ 701, 702 and 705, is controlling and requires that appellant must have been "convicted" of smuggling before there could be any deduction from his pay on account of the loss to the ship.

■ There is no doubt under the evidence that, under the applicable Dutch Custom regulations, appellant committed an act of smuggling, which he admitted on at least two occasions. He was given appropriate notice, logged and charged with the proper pro rata sum. To this action of the Captain, he submitted no defense, as is permitted in the statute.[1] He simply said he was not guilty. His protestations before the Shipping Commissioner that he had thrown the cigarettes overboard without producing corroboration have a hollow sound. When there confronted by a shipmate who testified in his presence that appellant admitted to him in Rotterdam that the cigarettes had been concealed, the furtive hangdog claims of appellant that he did not understand what was being said are puerile and cannot avail him.

■ It is contended that the case does not fall squarely within the statute because appellant was not "convicted" of smuggling.[2] Another section of the Act indicates that a penalty can be adjudged even though the deed has not been made the subject of any criminal proceeding.[3] If the statutory procedure of logging the seaman after notice and giving him the right to make

---

[1] 46 U.S.C.A. § 702. After notice to the seaman of the deduction in the log, he "may thereupon make such reply thereto as he thinks fit."

[2] 46 U.S.C.A. § 701, subd. Eighth.

[3] 46 U.S.C.A. § 705. "Enforcement of forfeitures. Any question concerning the forfeiture of, or deductions from, the

wages of any seaman or apprentice may be determined in any proceeding lawfully instituted with respect to such wages, notwithstanding the offense in respect of which such question arises, though made punishable by imprisonment as well as forfeiture, has not been made the subject of any criminal proceeding."

answer was not a "conviction," still we think the purpose was not to leave the owner remediless where the ship was fined as a result of the wilfull disobedience by the seaman of the regulations of a foreign country.

In an early case, prior to the enactment of the statute, it was said: "Ware was put in gaol by the police officers of the city, for some misconduct or offence against the laws of the country. For the money paid by the captain to obtain his liberation from imprisonment he is justly chargeable, and the respondent must be credited with the amount." Magee v. The Moss, Gilp. 219, 233, 16 Fed.Cas. No. 8944.

In a case also long before the passage of the statute, a seaman smuggled tobacco into the Port of Liverpool and the ship was fined. The Court sustained a deduction from his wages, saying: " * * * the act was unlawful. His conduct must, therefore, be regarded as a gross violation of duty, attended with expense and delay to the ship, for which it is proper to impose a subtraction of wages by way of correction and amends." Scott v. Russell, 1 Abb. Adm. 258, 261, 21 Fed.Cas. No. 12,546.

The right of recoupment has, however, recently been recognized again. In Shilman v. United States, 2 Cir., 164 F.2d 649, 652, it is said: "The cases cited by the appellees in support of a set off of $200 all fall within the category of expenses incurred on behalf of the ship in connection with the voyage. Sometimes they have related to hiring a substitute for a deserting seaman or for securing his return; sometimes for making the vessel good out of a seaman's wages for medical expenses occasioned by his assault on a member of the crew; at other times they have been deductions for a smuggling of goods which subjected the vessel to jeopardy, or for allowing a stowaway to be on board. Swanson et al. v. Torry et al., 4 Cir., 25 F.2d 835; The Ellen Little, D.C. Mass., 246 F. 151; The W. F. Babcock, 2 Cir., 85 F. 978; The T. F. Whiton, D.C.S.D.N.Y., [23] Fed.Cas. No. 13,849; Snell et al. v. The Independence, D.C.E.D. Pa. [22] Fed. Cas. No. 13,139; Scott v. Russell, D.C.S.D.

N.Y., [21] Fed.Cas. No. 12,546; Magee v. The Moss, D.C.E.D. Pa. [16] Fed.Cas. No. 8,944."

 We are of opinion the Act, which was passed to mitigate the intolerable conditions of seamen then existing, cannot be construed as an abolition of the amount of equitable right of recoupment by a shipowner from a seaman who has caused loss to the ship by a wilfull violation of the laws of another country. It is possible to reconcile the result and the provisions of the Act. But we will not pursue such barren dialectics to give color to a claim based on essential lawlessness and cynical contempt for all regulations.

The decree is affirmed.