Robert **ROEDER**

v.

**ALCOA STEAMSHIP CO., Inc.,**
**Appellant.**

**No. 17763.**

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1969.

Decided Feb. 3, 1970.

Mark D. Alspach, Krusen, Evans &
Byrne, Philadelphia, Pa. (H. Wallace
Roberts, Philadelphia, Pa., on the brief),
for appellant.

John Dorfman, Dorfman, Pechner,
Sacks & Dorfman, Philadelphia, Pa., for
appellee.

Before HASTIE, Chief Judge, and
VAN DUSEN and ADAMS, Circuit
Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from the District Court's order of January 3, 1969, granting summary judgment to a seaman suing for wrongfully withheld wages.

The District Court's order was based on the facts alleged in the defendant's affidavit.[1] Plaintiff Robert Roeder was employed as a seaman aboard defendant's *SS Alcoa Master*, having joined the crew on February 24, 1965, for a voyage pursuant to foreign articles. On July 2, 1965, Roeder and fellow seaman Colson were painting the deck. Due to extremely offensive conduct of Roeder,[2] Colson understandably told the boatswain that he did not wish to continue working with Roeder, and immediately retired to his room. The Chief Mate, being informed of the incident, ordered Colson back to work. He "instructed both men to stay out of each other's way and to do nothing further that would disrupt the harmony then existing. The Chief Mate specifically ordered Roeder to leave Colson alone and to do nothing that would cause any further dispute or trouble." Within minutes after this order, the two men "had an altercation" in which "[b]lows were struck by both parties;" the fight was "precipitated" by Roeder. The Chief Mate, upon learning of the

fight, reported the incident and attending circumstances to the vessel's Master, who logged both men "for engaging in a fight in willful disobedience of the Chief Mate's order." The log entry as to Roeder read:

"July 4, 1965. Robert M. Roeder is logged one day's pay in the amount of $13.85. Fighting aboard Ship P.M. July 2nd.

A. Ohren
Master

"KE Graham [Chief Mate]
Affg
"July 4, 1965. The above entry read and copy given Robert Roeder and his reply is as follows:

NO REPLY
A. Ohren
Master

KE Graham
Affg"

When plaintiff signed off the ship on September 14, 1965, $13.85, pursuant to the log entry, was withheld from his wages.

The plaintiff instituted suit on June 9, 1967, to recover the withheld wages and a penalty, pursuant to 46 U.S.C. § 596 (1964).[3] He moved for summary judgment on June 24, 1968. The court granted the plaintiff's motion and, calculating the period during which such wages were wrongfully withheld to be

1. The defendant filed an affidavit contra the Motion for Summary Judgment, attested to by its Assistant Treasurer, setting forth the defendant's version of the facts leading to the withholding of wages. The plaintiff filed a supplemental affidavit, attested to by his lawyer, setting forth the relevant log entries. Since neither affidavit was "made on personal knowledge," both were improper under Rule 56(e) of the Federal Rules of Civil Procedure. However, the District Court found that the facts set forth in the defendant's affidavit were "undisputed" and that the "parties are apparently willing to have the court dispose of the motion as though the [defendant's] affidavit conformed to the rule."

2. The defendant's affidavit states that the Chief Mate "noted that Roeder was vis-

ibly intoxicated but considered him sufficiently sober to perform his work."

3. 46 U.S.C. § 596 provides, in part:
"The master or owner of any vessel * * * making foreign voyages * * * [shall pay to every seaman his wages] within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens * * *. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned *without sufficient cause* shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed * * *." (Emphasis added.)

1171 days,[4] entered judgment for the plaintiff in the amount of $32,450.55.[5] The defendant appeals.

Defendant asserts that the wages were properly deducted pursuant to 46 U.S.C. § 701 (1964), which provides:

"Whenever any seaman * * * commits any of the following offenses, he shall be punished as follows:

* * * * * *

"Fourth. For willful disobedience to any lawful command at sea * * * by forfeiture from his wages of not more than four days' pay * * *."

In response to this defense, the plaintiff asserts two propositions: (1) that Johnson v. Isbrandtsen Co., 190 F.2d 991 (3rd Cir. 1951), aff'd. 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952), protects a seaman from deduction of wages for fighting, even if such fighting is in direct violation to a specfic command given at sea, and (2) that the log entry, stating simply that Roeder was fined for "fighting," cannot be later explained to mean "fighting in disobedience to a lawful order given at sea." We reject both propositions.

In Johnson v. Isbrandtsen, *supra,* Johnson, without justification, stabbed a fellow crew member. The shipowner withheld from Johnson's wages the cost to it of diverting the ship and of treating the crew member's wound. This court affirmed a judgment for Johnson, holding that deductions from wages were only proper if they fit within the enumerated provisions of 46 U.S.C. § 701. Since Johnson had never been given an order, the court held that Johnson had not violated § 701(4), saying: "paragraph four provides a penalty for disobedience to specific commands and is not intended to relate to the general discipline on shipboard." 190 F.2d at 993.

▇▇▇ We agree with the plaintiff that general orders relating to discipline of the ship cannot justify a withholding for fighting. As this court recognized in Johnson v. Isbrandtsen,

"Under the best of conditions many voyages result in tensed nerves and sharpened animosities. Assaults, though usually not of a dangerous character, occur occasionally on shipboard." 190 F.2d at 993.

But this does not mean that a ship's officers are powerless to prevent fights. Where a ship's officer has reason to believe that two seamen will fight if left together, he may order them to stay apart. If the order is given as a "specific command," then the men are obligated to follow it, or else suffer the penalties prescribed by § 701(4).

▇▇▇ In the instant case, as alleged in the defendant's affidavit, Colson understandably refused to work with Roeder. From Roeder's conduct, the Chief Mate reasonably supposed that the two men would fight if left together. Therefore, he "specifically ordered Roeder to leave Colson alone and to do nothing that would cause any further dispute or trouble." Roeder willfully disobeyed this order in precipitating a fight only moments later. Under these circumstances, the order was justified, and the penalty assessed against Roeder for disobeying the order was warranted.

▇▇▇ We agree that in cases of this type log entries should be given great weight. Congress has specifically provided that in the absence of a proper log entry, including prompt notification to the offender that a charge is being

---

4. 1171 days elapsed between the withholding on September 14, 1965, and the date on which the plaintiff submitted an order, November 26, 1968. The motion for summary judgment was granted by opinion of November 22, 1968, and judgment was entered on January 3, 1969. It would appear that 46 U.S.C. § 596 contemplates the date of final judgment as that which ends the penalty period, see Pacific Mail Steamship Co. v. Schmidt, 241 U.S. 245, 36 S.Ct. 581, 60 L.Ed. 982 (1916), but since the plaintiff does not object to the order, that issue is not before this court.

5. This amount represents the $13.85 withheld plus a penalty equaling the product of $27.70 (two days' pay) times 1171 days. See Swain v. Isthmian Lines, Inc., 360 F.2d 81, 84–88 (3rd Cir. 1966).

made, the court, in its discretion, may exclude evidence of the offense. 46 U.S. C. § 702.[6] The reason for this rule is to prevent possible prejudice to the seaman. Requiring prompt entry of the charge insures that the Master cannot later allege as a basis for a penalty a prior incident, so insignificant that no charge was made at the time of its commission, in retaliation for some later action of the seaman that cannot be punished.[7] In addition, without prompt notification of the charge, a seaman may, in the course of a long voyage, forget attending circumstances that would afford him a defense.[8]

In the instant case, Roeder was informed two days after the incident that he was being charged with an offense, and that his penalty was the loss of one day's pay. He was given an opportunity to reply, and he had ample opportunity to gather evidence in his defense. Because the statutory protection was given, evidence of the offense could not be excluded.[9]

Therefore, the ship owner is not bound by the exact wording of the log entry in the light of defendant's affidavit explaining it, although its wording will be given great weight by any fact finder in determining the actual reason

6. 46 U.S.C. § 702 provides:
"Upon the commission of any of the offenses enumerated in section 701 of this title an entry thereof shall be made in the official log book on the day on which the offense was committed, and shall be signed by the master and by the mate or one of the crew; and the offender, if still in the vessel, shall * * * be furnished with a copy of such entry, and have the same read over distinctly and audibly to him, and may thereupon make such a reply thereto as he thinks fit; and a statement that a copy of the entry has been so furnished, or the same has been so read over, together with his reply, if any made by the offender, shall likewise be entered and signed in the same manner. In any subsequent legal proceedings the entries hereinbefore required shall, if practicable, be produced or proved, and in default of such production or proof the court hearing the case may, at its discretion, refuse to receive evidence of the offense."

7. See The Sharon, 52 F.2d 481, 484 (E.D. Va.1931):
"The purpose of [section 702] is to protect seamen against arbitrary and unwarranted acts and oppression by the master, not to aid a seaman in taking advantage of his own wrongdoing."
Also see United States v. Brown, 24 Fed. Cas. 1276 (No. 14,672 (D.Ore.1876):
"The evident purpose of the statute is to prevent prosecutions for breaches of discipline on shipboard, except in those cases where the master shall deem the matter of sufficient importance, while the circumstances are all

fresh in his memory, and before there is any temptation to make use of it as a means to some other end, to enter a charge against the offender, together with his reply, in the official log-book. If any difficulty arises between the crew and the master, a previous offense or dereliction [of duty,] of which no entry was made, cannot be invoked or trumped up, as a make-weight in this subsequent controversy."

8. See The St. Paul, 133 F. 1002 (S.D. N.Y.1904).

9. 46 U.S.C. § 702 requires entry of the offense in the log book "on the day on which the offense was committed." The entry in this case was made two days after the offense, and therefore was technically defective. We believe that this technical deficiency is sufficient to make the withholding illegal. While the log entry is basically evidentiary in nature, Eldridge v. Isbrandtsen Co., 89 F. Supp. 718, 720 (E.D.Pa.1950), strict compliance with the statute should be encouraged. However, because the substance of the protective features of the statute was met, the shipowner should not be precluded from introducing evidence showing that the deduction was made with sufficient cause. The proper resolution in such a case, if the commission of the offense can be proved, has been to award the seaman his withheld wages without any penalties. See, e. g., The Ella Pierce Thurlow, 18 F.2d 675, 676 (E.D,Va.1926), aff'd. sub nom., Swanson v. Torry, 25 F.2d 835 (4th Cir. 1928); The St. Paul, 133 F. 1002 (S.D. N.Y.1904); The Cora F. Cressy, 131 F. 144 (D.Mass.1904).

that Roeder was fined. See, e. g., Socony-Vacuum Oil Co. v. Smith, 179 F.2d 672, 675 (5th Cir. 1950).[10]

The District Court's order of January 3, 1969, filed January 6, 1969, will be reversed. Because it appears that there remains a genuine issue of fact as to whether Roeder was fined simply for fighting or for fighting in willful disobedience to a lawful order of the Chief Mate,[11] the case will be remanded for further proceedings consistent with this opinion.

10. We note that this is not a case where the proposed explanation or clarification of the log entry is inconsistent with the log entry itself. See The Georgian, 76 F.2d 550, 551 (5th Cir. 1935).

11. In his reply to the defendant's motion for reconsideration, the plaintiff argued that "even if [the Chief Mate's order was 'lawful', as contemplated by 46 U. S.C. § 701(4)], Roeder was logged for fighting, not for disobeying this order." This argument goes to accuracy of the log entry's language and the motive of the Master in fining Roeder. At trial, the plaintiff will have an opportunity to cross-examine the Chief Mate and the Master to determine whether their motive in fining Roeder was in fact, as the defendant stated in its affidavit, "for engaging in a fight in willful disobedience of the Chief Mate's order."